FILED US District Court-UT
SEP 30 '26 PM04:22

MELISSA HOLYOAK, United States Attorney (#9832)
MARK E. WOOLF, Assistant United States Attorney (WA #39399)
BRENT L. ANDRUS, Assistant United States Attorney (NY #5143474)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

SEALED

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PARKER JAMES WILDE,<br><br>Defendant. | Case: 2:26-cr-00382<br>Assigned To : Barlow, David<br>Assign. Date : 9/29/2026<br><br>INDICTMENT<br><br>Count 1: 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 (Securities Fraud)<br><br>Counts 2, 3, 6, and 7: 18 U.S.C. § 1343 (Wire Fraud)<br><br>Counts 4, 5, 8, and 9: 18 U.S.C. § 1957 (Money Laundering – Spending Statute) |

The Grand Jury Charges:

## I. Introductory Allegations

1. At all times relevant to this Indictment, Defendant Parker J. Wilde ("WILDE") was a resident of Utah County, Utah; Maricopa County, Arizona; and Orange County, California, with ownership, managerial, and decision-making control over the following companies (collectively, "WILDE ENTITIES") and their financial accounts:

a. ZIGI LLC, a Utah limited liability company registered with the Utah Division of Corporations in or about May 2018;

b. PJW Profit Ventures LLC, doing business as Private Label Accelerator ("PLA"), a Wyoming limited liability company registered in or about January 2022;

c. PJW Trading Group LLC, a Utah limited liability company registered in or about July 2023;

d. Passive Ecom Ventures LLC, a Wyoming limited liability company registered in or about August 2023; and

e. FBA 3.0 Unfair Advantage, an unregistered business entity that began operating in or about June 2020.

2. Neither WILDE nor any of the WILDE ENTITIES recorded a securities registration, exemption from registration, or notice of filing with the Utah Division of Securities or the United States Securities and Exchange Commission at any time relevant to this Indictment.

## II. The Schemes to Defraud

3. From in and around at least August 2021, and continuing through the present, within the District of Utah and elsewhere, WILDE executed two separate schemes

to obtain money from investors by means of materially false and fraudulent pretenses, representations and promises, deception, and omissions of material facts.

**A. The Amazon Investment Scheme**

**i. The Scheme and Artifice to Defraud**

4. Beginning in and around at least August 2021, and continuing to in and around April 2024, within the District of Utah and elsewhere,

**Parker J. Wilde,**

defendant herein, knowingly devised and intended to devise a scheme and artifice to defraud in order to obtain money from investors, through an investment scheme involving Amazon e-commerce stores, by means of false and fraudulent pretenses, representations, promises, and omission of material facts (hereinafter "Amazon Investment Scheme").

5. As part of the Amazon Investment Scheme, WILDE, and others known and unknown acting at his direction and under his employ, knowingly offered and attempted to offer securities, that is, investment contracts with WILDE and the WILDE ENTITIES, and by the use of means and instruments of transportation and communication in interstate commerce, that is, wire communications, directly and indirectly did willfully (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts,

transactions, practices, and courses of business which would operate and did operate as a fraud and deceit upon other persons.

**ii. The Object of the Amazon Investment Scheme**

6. It was the object of the Amazon Investment Scheme for WILDE to fraudulently obtain money from investors through false statements, misrepresentations, deception, and the omissions of material facts.

**iii. The Manner and Means of the Amazon Investment Scheme**

7. The manner and means of carrying out the scheme and artifice included the conduct and activity outlined in paragraphs 8 through 15 that follow.

8. WILDE proclaimed himself a business entrepreneur, and during the course of the Amazon Investment Scheme, and in furtherance thereof, he maintained an active presence across multiple online platforms to solicit investors and promote the Amazon Investment Scheme, including, among others, Instagram and Facebook, LinkedIn, TikTok, YouTube. WILDE utilized his online presence to promote the Amazon Investment Scheme, showing an enticing display of affluence, knowledge, and wealth to persuade investors to invest with him. WILDE also targeted his personal network of friends and associates and used that affinity to solicit investment in the Amazon Investment Scheme directly and indirectly. WILDE recruited other individuals to act as sales agents to solicit investment and promote the Amazon Investment Scheme for WILDE and the WILDE ENTITIES. In addition to solicitation and promotion through online platforms, WILDE

and others directly and indirectly solicited investors through means such as electronic communications, direct messaging, referrals, video messaging, telephonic communications, and in-person meetings

9. In furtherance and execution of the Amazon Investment Scheme, WILDE, and others with identities known and unknown who acted at his direction and under his employ, solicited investor funds from investors for the purchase of Amazon stores. The investment offering was described as a "done-for-you" automated Amazon store that WILDE and the WILDE ENTITIES promised to establish on behalf of investors. Investors were also promised that WILDE and the WILDE ENTITIES would exclusively manage and operate the Amazon stores.

10. In furtherance and execution of the Amazon Investment Scheme, WILDE, and others with identities known and unknown who acted at his direction and under his employ, specifically promoted the Amazon Investment Scheme as a passive investment opportunity with a money-back guarantee and product assurance guarantee if certain promised investment return thresholds were not met within a specified time period. WILDE and others promoted monthly returns from the Amazon Investment Scheme of between $2,000 and $10,000 to induce investors, with promises of consistent and substantial monthly returns.

11. In furtherance and execution of the Amazon Investment Scheme, investors entered into investment contracts with WILDE and the WILDE ENTITIES. The

investment contracts contained profit-sharing provisions that investors understood were intended to compensate WILDE and the WILDE ENTITIES from the profits generated by an investor's Amazon store in exchange for managerial efforts to be expended by WILDE and the WILDE entities on each investor's behalf.

12. In furtherance and execution of the Amazon Investment Scheme, WILDE, and others with identities known and unknown who acted at his direction and under his employ, encouraged investors to provide WILDE and the WILDE ENTITIES with access to investor credit cards with the promise that individual investor credit cards would be used by WILDE and the WILDE ENTITIES only to stock the investor's Amazon store as product was depleted from promised sales.

13. In furtherance and execution of the Amazon Investment Scheme, WILDE, and others with identities known and unknown who acted at his direction and under his employ, coordinated, created, and curated the Amazon Investment Scheme investor pitch, to include printed pitch materials, online pitch materials and content, and investment contracts in order to directly and indirectly solicit investors in multiple ways, including electronic communications, direct messaging, referrals, video messaging, telephonic communications, and in-person meetings.

14. Throughout the course of the Amazon Investment Scheme, and in furtherance and execution thereof, within the District of Utah and elsewhere, WILDE, and others known and unknown, acting at his direction and under his employ, made or caused

to be made one or more of the following false statements, representations and promises, and omissions of material facts to investors:

a. Falsely stating that WILDE and the WILDE ENTITIES would open, research, operate, and manage "100% automated" Amazon stores on behalf of investors, when most investors never received a functional or profitable store;

b. Falsely stating that WILDE and the WILDE ENTITIES had "100+active clients" with an average monthly profit of at least $3,000, which was not true;

c. Falsely stating that WILDE and the WILDE ENTITIES had 5+ years of successful operation, helping over 250 clients achieve a passive income stream, when they did not;

d. Falsely stating that WILDE and the WILDE ENTITIES had an 80% client success rate, when they did not;

e. Falsely stating that Amazon store inventories would be established within 30-60 days from investment, when WILDE knew that most of the stores failed stock inventories within that time period and many were never stocked at all;

f. Falsely stating that Amazon stores operated and managed by WILDE and WILDE ENTITIES on behalf of investors would generate thousands in annual passive income for investors, when WILDE knew that the Amazon stores generated little to no return and many were deactivated for violation of Amazon policies;

g. Falsely stating that the Amazon Investment Scheme carried little to no risk due to money-back guarantees and product assurance guarantees if certain return thresholds were not met, when WILDE knew this to be false; and

h. Omitting to disclose that WILDE intended to use new investor funds to compensate prior investors who sought compensation under the money-back and product assurance guarantees and to promote the appearance of investment success.

15. Approximately 200 victims invested in the Amazon Investment Scheme, with most initial investments between $10,000 and $40,000 deposited into financial accounts held in WILDE's name and the names of the WILDE ENTITIES that were exclusively controlled by WILDE. Upon receipt of investor funds, WILDE transferred millions to his own personal cryptocurrency accounts, paid off personal credit cards, and diverted investor funds to support his curated public persona and lavish lifestyle. WILDE also used investors' credit cards, provided by investors exclusively for use by WILDE and the WILDE entities in operating the investors Amazon e-commerce stores, for his personal use and without authorization.

**Count 1**
**15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5**
**(Securities Fraud)**

16. All factual allegations set forth above are incorporated by reference and realleged as though fully set forth herein.

17. Beginning in and around at least August 2021, and continuing to in and around April 2024, in the District of Utah and elsewhere,

**Parker J. Wilde,**

defendant herein, willfully, knowingly, and with intent to defraud, in the purchase and sale of securities, that is, investment contracts with individual investors offered through the Amazon Investment Scheme outlined herein, and by the use of means and instruments of transportation and communication in interstate commerce, that is wire communications, directly and indirectly, did (1) employ a device, scheme, and artifice to defraud; (2) make

any untrue statement of material fact and omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts, transactions, practices, and courses of business that would operate and did operate as a fraud and deceit upon other persons, and did aid and abet others in so doing, all in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2:

| Count | Date (on or about) | Sender (Location) | Recipient (Location) | Scheme |
|---|---|---|---|---|
| 1 | Sept. 7, 2023 | Fedwire for $23,650.00 from Victim 1's account at Bank of America (New Jersey) | PJW Profit Ventures LLC's JP Morgan Chase Bank account ending in 9668 (opened in Utah) | Amazon Investment Scheme |

**<u>Count 2 and 3</u>**
**18 U.S.C. §§ 1343 and 2**
**(Wire Fraud)**

18. All factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

19. Beginning in and around at least August 2021 and continuing to in or around April 2024, within the District of Utah and elsewhere,

**Parker J. Wilde,**

defendant herein, having devised and intending to devise a scheme and artifice to defraud in order to obtain money and property from investors through an investment scheme by

means of materially false and fraudulent pretenses, representations, promises, and omission of material facts, for the purpose of executing such scheme and artifice did transmit and cause to be transmitted the following wires, signs, and signals in interstate commerce in furtherance of said scheme, and did aid and abet others in so doing, all in violation of 18 U.S.C. §§ 1343 and 2, each wire constituting a separate count:

| Count | Date (On or about) | Sender (Location) | Recipient (Location) | Scheme |
|---|---|---|---|---|
| 2 | March 10, 2023 | Fedwire for $11,000 from Victim 2's account at Hapo Community Credit Union (Washington) | PJW Profit Ventures LLC's JP Morgan Chase account ending in 6369 (opened in Utah) | Amazon Investment Scheme |
| 3 | March 13, 2023 | Fedwire for $20,000 from Victim 3's account at Ally Bank (Utah) | PJW Profit Ventures LLC's JP Morgan Chase account ending in 6369 (opened in Utah) | Amazon Investment Scheme |

**<u>Counts 4 and 5</u>**
**18 U.S.C. § 1957**
**(Money Laundering – Spending Statute)**

20. All factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

21. On or about the dates alleged below, in the District of Utah, and elsewhere,

**Parker J. Wilde,**

defendant herein, knowingly engaged and attempted to engage, in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in

criminally derived property of value greater than $10,000, that is, the following transfers of funds, such property having been derived from specified unlawful activity, to wit, Securities Fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5, all in violation of 18 U.S.C. § 1957, each transfer or transaction constituting a separate count:

| Count | Date (on or about) | Description | Scheme |
|---|---|---|---|
| 4 | Sept. 7, 2023 | $19,500 check originating from JPMorgan Chase account ending in 3183 held in WILDE's name for payment to Company A using funds obtained from Victim 1. | Amazon Investment Scheme |
| 5 | March 13, 2023 | Wire transfer of $25,000 from JPMorgan Chase account ending in 3183 held in WILDE's name to his personal Coinbase account using funds obtained from Victim 2 and Victim 3. | Amazon Investment Scheme |

## B. The Day Trading Scheme

### i. The Scheme and Artifice to Defraud

22. Beginning in or around at least July 2023, and continuing through the present, within the District of Utah and elsewhere,

**Parker J. Wilde,**

defendant herein, knowingly devised and intended to devise a scheme and artifice to defraud in order to obtain money from investors, through a day-trading investment scheme ("Day Trading Scheme"), by means of false and fraudulent pretenses, representations, promises, and omission of material facts made to those investors.

**ii. The Object of the Day Trading Scheme**

23. It was the object of the Day Trading Scheme for WILDE to fraudulently obtain money from investors through false statements, misrepresentations, and the omission of material facts.

**iii. The Manner and Means of the Day Trading Scheme**

24. The manner and means of carrying out the Day Trading Scheme includes, but is not limited to, the conduct described in paragraphs 25 through 33 below.

25. In execution and furtherance of the Day Trading Scheme, WILDE curated his online presence and social media to portray himself as a successful day trader. WILDE solicited potential investors for his Day Trading Scheme directly and indirectly through his online content, in-person meetings, and electronic communications such as texts and direct messaging.

26. In execution and furtherance of the Day Trading Scheme, WILDE falsely claimed:

a. That he could generate returns for investors of more than double based on his track record of reliably profiting from short-term price fluctuations in various cryptocurrency asset marketplaces;

b. That he had a large investment portfolio of up to $64 million;

c. That he used a strict stop loss method to ensure significant returns for investors and to mitigate risk;

d. That he had achieved a return of over 250% and generated over $1 million in profit for an investor; and

e. That he could create generational wealth for his clients through his Day Trading Scheme.

27. At least a dozen victims invested in the Day Trading Scheme, with total investment funds received by WILDE exceeding $1 million.

28. In furtherance and execution of the Day Trading Scheme, investors wired funds directly to accounts controlled by WILDE, transferred funds to WILDE via peer-to-peer applications, transferred funds to third parties via peer-to-peer applications as directed by WILDE, transferred cryptocurrency directly to wallets controlled by WILDE, and via hand-to-hand cash delivery.

29. In furtherance and execution of the Day Trading Scheme, WILDE knowingly and willfully failed to disclose to investors that he was a net loser in his day trading efforts.

30. In furtherance and execution of the Day Trading Scheme, WILDE engaged in knowing and willful lulling efforts to pacify investors by generating and providing investors with cropped screenshots of subaccount statements and balances while assuring investors, both verbally and in writing via text and other forms of electronic communication, that their funds were safe and generating the returns he promised when they were not.

31. WILDE's lulling efforts and omission of material facts led many investors to believe their invested funds had grown substantially, resulting in investors requesting liquidation of and access to their investment funds for their benefit. When investors

requested the return of their funds, WILDE falsely claimed that his accounts were not accessible to him and, in some circumstances, sought additional funds from investors falsely promising it would assist in getting access to their funds.

32. WILDE also utilized new investor funds to make Ponzi-like payments to prior investors without disclosing to new investors that their funds would be used to compensate prior investors.

33. WILDE also delivered several checks for large sums to chosen investors knowing that the financial accounts upon which the checks were purportedly drawn did not have sufficient funds. WILDE contacted at least one investor and asked the investor to enter into a settlement agreement with promised repayment if that investor also entered a non-disclosure agreement and recanted statements previously made to law enforcement.

**Counts 6 and 7**
**18 U.S.C. §§ 1343 and 2**
**(Wire Fraud)**

34. All factual allegations set forth above are incorporated by reference and realleged as though fully set forth herein.

35. Beginning in or around July 2023 and to in or around September 2026, within the District of Utah and elsewhere,

**Parker J. Wilde,**

defendant herein, having devised and intending to devise a scheme and artifice to defraud in order to obtain money and property from investors through an investment scheme by means of materially false and fraudulent pretenses, representations, promises, and

omission of material facts, for purposes of executing such scheme and artifice did transmit and cause to be transmitted the following wires, signs, and signals in interstate commerce, and did aid and abet others in so doing, all in violation of 18 U.S.C. §§ 1343 and 2, each wire constituting a separate count:

| Count | Date (On or about) | Sender (Location) | Recipient (Location) | Scheme |
|---|---|---|---|---|
| 6 | Jan. 2, 2025 | Fedwire for $100,000.00 from Victim 4 account at America First Credit Union (Utah) | WILDE account ending in X1634 at Sofi Bank (Utah) | Day Trading Investment Scheme |
| 7 | Sept. 5, 2025 | Fedwire for $100,000.00 from Victim 5 account at Wells Fargo Bank (Utah) | WILDE account ending in X1634 at Sofi Bank (Utah) | Day Trading Investment Scheme |

**Counts 8 and 9**
**18 U.S.C. § 1957**
**(Money Laundering – Spending Statute)**

36. All factual allegations set forth are incorporated by reference and realleged as though fully set forth herein.

37. On or about the dates alleged below, in the District of Utah, and elsewhere,

**Parker J. Wilde,**

defendant herein, knowingly engaged and attempted to engage, in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in

criminally derived property of value greater than $10,000, that is, the following transfer of funds, such property having been derived from specified unlawful activity, to wit, Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C § 1957:

| Count | Date (on or about) | Description (approximately) | Scheme |
|---|---|---|---|
| 8 | January 3, 2025 | Check 107 for $75,000.00 originating from Sofi Bank account ending in X1634 held in the name of WILDE to Individual 1 using funds obtained from Victim 4. | Day Trading Investment Scheme |
| 9 | September 8, 2025 | Fedwire for $26,000.00 from Sofi Bank account ending in X1634 held in the name of WILDE to Victim 6 account held at UniWyo Federal Credit Union using funds obtained from Victim 5. | Day Trading Investment Scheme |

## FORFEITURE NOTICE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense violating 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5, the defendant(s) shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the offense.

Pursuant to 18 U.S.C. § 981(a)(1)(C) (applicable to criminal forfeitures under 28 U.S.C. § 2461(c)), upon conviction of any offense violating 18 U.S.C. § 1343, the defendant(s) shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property.

The property to be forfeited includes, but is not limited to, a forfeiture money judgment and substitute assets as authorized by 21 U.S.C. § 853(p).

A TRUE BILL:

/s/
FOREPERSON OF GRAND JURY

MELISSA HOLYOAK
United States Attorney

MARK E. WOOLF
BRENT L. ANDRUS
Assistant United States Attorneys